UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GUY BARRON                                                                                          PLAINTIFF

V.                                                                    CIVIL ACTION NO. 3:16CV690 DPJ-FKB

BESTBUY CO., INC., ET AL.                                                                    DEFENDANTS

ORDER

This suit alleging violations of the Fair Credit Reporting Act is before the Court on motion of Defendants Citigroup, Inc./Citibank, N.A. ("Citibank") and Best Buy Co., Inc./Bestbuy.com LLC ("Best Buy") (collectively "Defendants") to compel arbitration [27] of Plaintiff Guy Barron's claims.[1]  Plaintiff responded in opposition.  The Court, having considered the submissions of the parties and the pertinent authorities, finds that the motion to compel arbitration [27] should be granted.

I.      Facts and Procedural History

Barron held a credit-card account with Best Buy that was owned and serviced by Citibank.  According to Plaintiff, he ceased using the card in June 2014, and paid off his debt to Defendants in November 2014.  Pl.'s Mem. [31] at 10.  Nevertheless, Defendants posted a $74.89 charge to the account on July 15, 2015.  Am. Compl., Ex. B [21-2] at 2.  Defendants then initiated three drafts from Barron's bank account in September, October, and November 2015, to satisfy the debt.  Am. Compl., Ex. A [21-1] at 1−3.  Before the November 2015 payment was withdrawn, Barron placed a stop-payment order on the pending debit, Am. Compl. [21] at 4, and disputed the $74.89 charge with Best Buy/Citibank, Am. Compl., Ex. B [21-2] at 2.  Defendants

---

[1] Plaintiff also named Transunion, LLC; Equifax Information Services, LLC; and Experian Information Solutions, Inc. as Defendants, but the claims against those defendants do not appear to be subject to the motion to compel arbitration.

investigated the disputed charge and ultimately credited Barron's account on February 6, 2016. Am. Compl., Ex. B [21-2] at 1.

While the investigation was taking place, Barron applied for two loans, but both lenders denied his request citing derogatory information on his credit report. Barron later discovered that Defendants had reported that he was "30 days late" in paying the card in December 2015. Am. Compl. [21] at 6. Believing this information was incorrect, Barron disputed the notation with the three credit reporting agencies and Defendants. In August 2016, Defendants notified Barron that they were "unable to change the information reported to the credit reporting agencies . . . , as it accurately reflects your account history with us." Am. Compl., Ex. E [21-5] at 1. Aggrieved, Barron filed this suit alleging violations of the Fair Credit Reporting Act ("FCRA").

Based on the arbitration provision in the credit-card agreement, Defendants moved to compel arbitration of the dispute, which Barron opposes. The motion is fully briefed, and the Court is prepared to rule.

II.     Applicable Standard

Determining whether to compel arbitration under the Federal Arbitration Act involves a two-step process. 9 U.S.C. § 3. First, the Court decides whether the parties agreed to arbitrate the dispute in question. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Second, "[i]f both questions are answered in the affirmative, [the] court then asks whether any federal statute or policy renders the claims nonarbitrable." *Jones v. Halliburton Co.*, 583 F.3d 228, 233–34 (5th Cir. 2009) (citation and quotation marks omitted).

"The Fifth Circuit has repeatedly emphasized the strong federal policy in favor of arbitration." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (citing *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).  Doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration.  *Id.*  And "arbitration should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (internal quotations and citations omitted).

III.    Analysis

There is no dispute that Barron had a credit card with Defendants, and the credit-card agreement contained an arbitration provision.[2]  Thus, the next question is whether Barron's FCRA claims fall within the scope of the following arbitration provision:

> **ARBITRATION**
> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*
> **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.  ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**
>
> *Agreement to Arbitrate:*  Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> *Claims Covered*
> **What Claims are subject to arbitration?**  All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this

---

[2] While Barron claims he had satisfied his debt to Defendants in 2014 and ceased using the card, he does not assert that he closed the account.  Moreover, as explained *infra,* courts have held that arbitration agreements are binding even after a lending relationship has ended.  *See Anglin v. Tower Loan of Miss, Inc.*, 635 F. Supp. 2d 523, 524 (S.D. Miss. 2009).

> Agreement and this arbitration provision.  All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims.  A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party.  Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

Defs.' Mem., Ex. A [27-1] at 23−24 (emphasis in original).  With respect to credit reporting, the agreement further provides:

### Credit Reporting

> We may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults on your account may be reflected in your credit report.  We may report account information in your name and the names of authorized users.  We may also obtain follow-up credit reports on you.
> If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement.  We will investigate the matter.  We will then tell you if we agree or disagree with you.  If we agree with you, we will contact each credit bureau to which we reported and request a correction.  If we disagree with you, we will tell you that.

*Id.* at 21−22.  In short, the credit-card agreement provides that Defendants may report account information to the credit bureaus and all claims related to the account are subject to arbitration.

In his Amended Complaint, Barron contends:  (1) Defendants reported (and are continuing to report) inaccurate derogatory account information to the credit-reporting agencies and (2) Defendants failed to investigate and correct the allegedly inaccurate information.  Am. Compl. [21] at 16−17.  Courts have routinely construed similar credit-reporting claims as falling within the scope of an arbitration provision in a loan or credit-card agreement.  For example, in *Anglin v. Tower Loan of Mississippi, Inc.*, the plaintiff alleged that his former lender continued to

4

obtain consumer credit reports on him, years after the loan was satisfied, in violation of the FCRA. 635 F. Supp. 2d at 524. The district court granted the lender's motion to compel arbitration, finding the dispute touched on the loan agreement. *Id.* at 528.

Similarly, in *Sherer v. Green Tree Servicing LLC*, the plaintiff paid off his loan early, and the servicer—a non-signatory to the loan—erroneously charged him a prepayment penalty. 548 F.3d 379, 380 (5th Cir. 2008). The servicer attempted to collect, then reported the plaintiff's failure to pay the penalty to various credit-reporting agencies. *Id.* Looking to the broad terms of the loan agreement, the Fifth Circuit found that the plaintiff's FCRA claims against the servicer were subject to arbitration. *Id.* at 382.

Barron attempts to cast his claims as a "theft" or "unlawful taking" and reasons such claims are beyond the creditor-debtor relationship and outside the arbitration provision. But Barron's Amended Complaint contains only one count titled "Fair Credit Reporting Act" and relies entirely on 15 U.S.C. § 1681. Am. Compl. [21] at 11−27. On the whole, Barron's FCRA claims against Defendants regarding their reporting and investigation of his payment history properly fall within the credit-card agreement and its arbitration provision. *See Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAx), 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012) (compelling arbitration of FCRA claim as within scope of Citibank Arbitration Agreement); *Yaqub v. Experian Info. Sols., Inc.*, No. CV 11-2190-VBF (FFMX), 2011 WL 12646340, at *3 (C.D. Cal. June 10, 2011) (compelling arbitration of FCRA claim under Citibank Arbitration Agreement); *Cronin v. Citifinancial Servs., Inc.*, No. 08-1523, 2008 WL 2944869, at *6 (E.D. Pa. July 25, 2008) (compelling arbitration and rejecting the plaintiff's argument that FCRA claims are outside the scope of the Citibank Arbitration Agreement); *see also Daugherty v. Experian Information Solutions, Inc.*, 847 F. Supp. 2d 1189 (N.D. Cal. 2012)

(compelling arbitration of FCRA claim); *Mitchell v. Verizon Wireless*, No. 05 C 511, 2006 WL 862879, at *3 (N.D. Ill. Mar. 31, 2006) (explaining "that courts routinely deem FCRA claims arbitrable."); *DeGraziano v. Verizon Commc'ns, Inc.*, 325 F. Supp. 2d 238, 245 (E.D.N.Y. 2004) (compelling arbitration of FCRA claims). The Court finds a valid agreement to arbitrate exists between Barron and Defendants and Barron's FCRA claims fall within the scope of that agreement.

Next, the Court must consider whether any federal statute or policy renders the claims nonarbitrable. *Jones*, 583 F.3d at 233–34. Barron argues that arbitration limits his statutory right to attorney's fees under the FCRA. He reasons that the FCRA provides for an award of attorney's fees to the prevailing party, but the American Arbitration Association's ("AAA") rules merely state an arbitrator "may" grant any remedy, including attorney's fees. Pl.'s Mem. [31] at 18. This assertion is not well-taken.

"[S]tatutory claims may be the subject of an arbitration agreement," and "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) (alterations in *Gilmer*). Here, the arbitration provision provides, "The arbitrator will apply applicable substantive law consistent with the [Federal Arbitration Act] and applicable statutes of limitations, will honor claims of privilege recognized at law, and *will have the power to award to a party any damages or other relief provided for under applicable law*." Defs.' Mem., Ex. A [27-1] at 25 (emphasis added). In fact, the AAA rule Barron cites specifies that the arbitrator "may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and

6

costs, in accordance with the law(s) that applies to the case." Pl.'s Mem., Ex. G [31-7] at 4. In short, there is no provision which limits Barron's available recovery; both the AAA rule and the arbitration agreement provide for an award of attorney's fees in accordance with the FCRA.

IV.    Conclusion

The Court has considered all arguments raised by the parties; those not addressed in this Order would not have changed the outcome.  For the reasons stated, the Court finds the motion to compel arbitration [27] should be granted as to Plaintiff's claims against the moving Defendants, Citibank and Best Buy.

Because this Order does not resolve all claims against all parties, the parties, including Citibank and Best Buy, are directed to contact Magistrate Judge F. Keith Ball to schedule a telephonic conference to discuss continuation, cessation, or modification of the current stay.

**SO ORDERED AND ADJUDGED** this the 5th day of April, 2017.

                                                  s/ *Daniel P. Jordan III*
                                                  UNITED STATES DISTRICT JUDGE